IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

CHESAPEAKE BANK,
          Plaintiff,

        v.                              CIVIL ACTION NO. 4:14cv66

STUART D. BERGER,
DEBORAH D. BERGER,
BERGER PROPERTIES OF OHIO, LLC,
BERGER PROPERTIES OF FLORIDA, LLC,
BERGER PROPERTIES OF TEXAS, LLC,
BERGER PROPERTIES OF MARYLAND, LLC,
S & D UNLIMITED OF TEXAS, LLC,
S & D UNLIMITED, LLC,
THE UNLIMITED GROUP, INC.,
and
THE LAW OFFICES OF STUART BERGER, PLLC,

          Defendants.

### MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff Chesapeake Bank's Emergency Motion for an Order to Show Cause and the immediate appointment of a receiver. Plaintiff alleges that Defendants have violated the Temporary Restraining Order entered by this Court on June 13, 2014, and the Preliminary Injunction entered by this Court on July 14, 2014. The parties have fully briefed the issue and the Court held a hearing on the Motion on October 14, 2014. The matter is now ripe for judicial determination. For the reasons stated in open court, which are set forth more fully below, the Court **FINDS** Defendants in civil contempt, and **ORDERS** the appointment of a receiver.

### I. PROCEDURAL AND FACTUAL HISTORY

On June 4, 2014, Chesapeake Bank filed a Complaint against Stuart and Deborah Berger,

the sole shareholders of Alternatives Unlimited, Inc. Alternatives Unlimited is the entity to which Chesapeake Bank provided a revolving line of credit in 2010 pursuant to a Cash Flow Agreement. That credit was extended and modified over the years, and Chespeake Bank alleges that Alternatives Unlimited owes it over $7 million. Compl. ¶ 45. In 2013, the Bergers resigned as officers of Alternatives Unlimited.

Chesapeake Bank has also sued six LLCs, which it alleges are entities controlled and owned by the Bergers. The LLCs executed guaranty agreements and pledged real property as collateral to secure the repayment of Alternatives Unlimited's line of credit. It has further named as a defendant The Unlimited Group, Inc., also owned and controlled by the Bergers and the management agent for the LLCs. The final defendant is The Law Offices of Stuart Berger, PLLC, also owned and controlled by the Bergers. The Complaint alleges that Alternatives Unlimited fraudulently transferred funds to all defendants.

The Complaint has six counts. Count I seeks preliminary and final injunctive relief against the LLCs, the management company, and the Bergers. It alleges that the Bergers have diverted Alternatives Unlimited funds to the LLCs and the management company, and have also caused the LLCs to sell real property and use sales proceeds to pay other creditors. Chesapeake Banks says the funds it loaned were only intended to benefit Alternatives Unlimited, and needs the injunction to preserve assets pledged to secure its loans. Count II seeks appointment of a receiver for the LLCs and the management company pursuant to Fed. R. Civ. P. 66 and 28 U.S.C. § 754 to ensure the assets are disposed of in an orderly fashion.

Count III is a breach of contract claim against S & D Unlimited of Texas, LLC, alleging that it is obligated under a guaranty agreement to pay Chesapeake Bank because Alternatives Unlimited is in default but has not done so despite demand for payment. Count IV seeks a

declaration that the Bergers' transfers of Alternatives Unlimited Funds were fraudulent and therefore void under Virginia law. Count V alleges all defendants were unjustly enriched by the funds transfers. Count VI seeks the imposition of a constructive trust.

On June 6, 2014, Chesapeake Bank filed a Notice of Hearing, with a certificate of service attesting that the notice was mailed by UPS overnight delivery to the Bergers and three attorneys, and by regular United States Mail to the LLCs, the management company, and the law firm. On June 10, 2014, it filed a Notice of Supplemental Exhibits, including two Alternatives Unlimited Quickbooks ledgers.

On June 12, 2014, this Court held a hearing on Plaintiff's Motion for a Temporary Restraining Order. Counsel conferred and submitted an agreed Temporary Restraining Order which this Court granted in part on June 13, 2014.

On July 11, 2014, this Court held a Motion Hearing on Plaintiff's Motion for a Preliminary Injunction. On July 14, 2014, the Court issued the Preliminary Injunction and deferred appointment of a receiver. Specifically, Defendants are enjoined from paying out or transferring any funds or property to any person or entity other than as specified in the Injunction Order. Defendants are also required to provide the Bank with a full and complete accounting of any and all expenses paid during the pendency of the prior Temporary Restraining Order and the subsequent extension thereof within ten days of the date of the Order, and every thirty days during the pendency of the Preliminary Injunction.

On September 25, 2014, Plaintiff filed the instant Motion for an Order to Show Cause and renewed its Motion for Appointment of a Receiver. On September 29, 2014, the Court issued an Order requiring Defendants to appear on October 14, 2014, and to show cause why (1) Defendants should not be held in contempt for violating the Preliminary Injunction of July 14,

2014, and (2) the Court should not immediately appoint a receiver.

On October 14, 2014, the Court held a hearing on the Motion, wherein the Court heard witness testimony and received exhibits as evidence. As articulated from the bench, the Court **FINDS** Defendants in civil contempt and **ORDERS** the appointment of a receiver.

## II. LEGAL STANDARDS

### A. Contempts – Civil vs. Criminal

It is well-established that federal courts possess an inherent power to punish for contempts. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). This power reaches to contempts that occur before the court (i.e., "direct" contempts) and to contempts that occur out of court (i.e., "indirect" contempts). *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833 (1994). In this case, indirect contempts are at issue.

As an initial matter, the Court must determine the whether the movant seeks to hold the defendant in civil or criminal contempt. *Major v. Orthopedic Equip. Co.*, 496 F. Supp. 604, 611 (E.D.Va. 1980). This determination is important from the outset as it "may bear on the type of notice required, the applicable standard of proof, and other issues." *Buffington v. Baltimore Cnty, Maryland*, 913 F.2d 113, 133 (4th Cir. 1990) (citing *Smith v. Sullivan*, 611 F.2d 1050, 1052 (5th Cir. 1980)). "[C]riminal contempt [is] 'a crime in the ordinary sense,'" *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 799 (quoting *Bloom v. Illinois*, 391 U.S. 194, 201 (1968)), such that the subject of the sanctions is "entitled to full criminal process," *Bagwell*, 512 U.S. at 827, including the use of an independent prosecutor, *United States v. Neal*, 101 F.3d 993, 997 (4th Cir. 1996). In contrast, civil contempt sanctions call for fewer procedural protections; notice and an opportunity to be heard are required. *Bagwell*, 512 U.S. at 827. Unlike criminal contempt, the finding of civil contempt must rest on proof by clear and

convincing evidence; there is neither a right to a jury trial nor is proof beyond a reasonable doubt required. *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004); *Bagwell*, 512 U.S. at 827.

In addition to the aforementioned differences in the substance of proceedings, the distinction between criminal and civil lies in "the character of the relief that the proceeding will afford." *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 631 (1988). The contempt is civil if the purpose is remedial and intended to either coerce compliance with the court order or to compensate the plaintiff for losses sustained. *Buffington*, 913 F.2d at 133. *See also Consolidation Coal Co. v. Local 1702, United Mineworkers of Am.*, 683 F.2d 827, 829 (4th Cir. 1982) (stating fines for civil contempt "are designed primarily to coerce behavior"). If, however, the purpose is to vindicate the authority of the court by punishing the offending party for past disobedience, the proceeding is criminal. *Buffington*, 913 F.2d at 133.

In the instant case, Plaintiff's Motion for an Order to Show Cause and Immediate Appointment for a Receiver appears to have two goals. First, Plaintiff seeks compensation for losses amassed while Defendants failed to comply with this Court's Preliminary Injunction Order. Second, Plaintiff seeks to coerce compliance with this Court's Order that Defendants remove certain persons from their payroll and only make payments in the ordinary course of business. Thus, Plaintiff is not seeking any sort of punitive sanction against Defendant. For this reason, the Court finds that Plaintiff seeks to hold Defendant in civil contempt.

## B. Civil Contempt Standard

Civil contempt is appropriate where a party has violated an order of a court which "'set[s] forth in specific detail an unequivocal command' which a party has violated." *In re General Motors*, 61 F.3d 256, 258 (4th Cir. 1995) (quoting *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th

Cir. 1986)).  The violation must be of an order that is "clear and unambiguous." *Id.* (quoting

*Project B.A.S.I.C. v. Kemp,* 947 F.2d 11, 16 (1st Cir.1991)).  To establish civil contempt,

Plaintiff must show each of the following elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;
>
> (2) that the decree was in the movant's "favor";
>
> (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive) of such violations; and
>
> (4) that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.,* 218 F.3d 288, 301 (4th Cir.2000) (quoting *Colonial Williamsburg*

*Found. v. The Kittinger Co.,* 792 F .Supp. 1397, 1405–06 (E.D.Va.1992), *aff'd,* 38 F.3d 133, 136

(4th Cir.1994)).

A good faith attempt to comply, even if such attempt proves ineffective, is a defense to a

civil contempt order. *Consolidation Coal Co. v. Local 1702, United Mineworkers of Am.,* 683

F.2d 827, 832 (4th Cir. 1982) (citing *Consolidation Coal Co. v. Int'l Union, United Mine*

*Workers of Am., et al.,* 537 F.2d 1226 (4th Cir. 1976)).  Other defenses include substantial

compliance or the inability to comply. *Id.* (citing *Washington Metro. Area Transit Auth. v.*

*Amalgamated Transit Union,* 531 F.2d 617 (D.C. Cir. 1976)).

If contempt is found, the trial court has broad discretion to fashion a remedy. *In re*

*General Motors,* 61 F.3d at 259.  A coercive contempt sanction may involve imprisonment or a

fine. *See Bagwell,* 512 U.S. at 829.  With respect to fines, the power to fine is based on power to

fashion injunctive relief; without the authority to levy fines, a court would have power to grant a

remedy but no effective means of enforcement. *Consolidation Coal Co. v. Local 1702, United*

*Mineworkers of Am.,* 683 F.2d 827, 829–30 (4th Cir. 1982).  A contempt fine is considered civil

when the fine is remedial (i.e., either paid to the complainant or, when payable the court,

avoidable by the contemnor by simply performing the affirmative act required by the court's

order). *Buffington*, 913 F.2d at 133. *See also Bagwell*, 512 U.S. at 829 (if the fine is not

intended to compensate, it is civil only if the contemnor has the opportunity to purge the fine,

i.e., reduce or avoid the fine through compliance). In other words, a fine that is payable to the

court but not conditioned on compliance with a court order is punitive and therefore, not civil.

*Buffington*, 913 F.2d at 134. As to the nature of the fine, a court may impose "a per diem fine . .

. for each day a contemnor fails to comply with an affirmative order . . . . [S]uch fines exert a

constant coercive pressure, and once the . . . command is obeyed, the future, indefinite, daily

fines are purged." *Bagwell*, 512 U.S. 821, 829.

     Courts may also order the contemnor to reimburse the complainant for reasonable

attorney's fees. *In re General Motors*, 61 F.3d at 259 (citing *United States v. Trudell*, 563 F.2d

889, 891 (8th Cir.1977)). Although willfulness is not an element of civil contempt, *Id.* at 258

(citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191 (1949)), district courts in this

Circuit have held that before awarding attorney's fees, a finding of "willful disobedience" –

whereby the contemnor's conduct rises to the level of obstinance or recalcitrance – may be

required. *Omega World Travel, Inc. v. Omega Travel, Inc.*, 710 F. Supp. 169, 172–73

(E.D.Va.1989), *aff'd*, 905 F.2d 1530 (4th Cir.1990) (unpublished), (citing *Wright v. Jackson*, 522

F.2d 955, 957–58 (4th Cir. 1975)). Mere negligence or carelessness is insufficient to support an

award of attorney's fees. *Id.*

## C. Appointment of Receiver

     In conjunction with the Emergency Motion, Chesapeake Bank also renews its Motion for

the Appointment of a Receiver. According to Plaintiffs, the receiver would "enter upon and take

possession and control of the property, both real and personal, of the Defendants in Receivership" and to "take any and all actions that he may deem necessary and proper to manage, lease, insure, and protect the property of the Defendants in Receivership," among numerous other duties.

Despite the lack of explicit statutory authority, federal courts routinely hold that they have the inherent equitable power to appoint a receiver. "[F]ederal law governs the issue of whether to appoint a receiver in a diversity action." *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir.2009). "The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) (citing 13 Moore's Federal Practice ¶¶ 66.02–03 (3d ed.1999)).

"A receiver . . . may be appointed for the limited purpose of safeguarding disputed assets." *First United Bank & Trust v. Square at Falling Run, LLC*, 1:11CV31, 2011 WL 1563027 (N.D.W. Va. Apr. 25, 2011). *See also Fed. Nat. Mortgage Ass'n v. Mapletree Investors Ltd. P'ship*, 10-CV-10381, 2010 WL 1753112 (E.D. Mich. Apr. 30, 2010) ("The appointment of a receiver is not a matter of right, but rather lies in the discretion of the district court and will be exercised only when necessary to protect the plaintiff's interest in property which is the subject of the action."). The factors courts consider are generally similar to those required for injunctive relief, including "fraudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms,

plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property. § 2983 Appointment of Receivers, 12 Fed. Prac. & Proc. Civ. § 2983 (2d ed.). Courts also look to the inadequacy of security to satisfy the debt and the financial position of the debtor. *Brill v. Harrington Inv., et al. v. Vernon Savings & Loan Ass'n*, 787 F. Supp. 250, 253-54 (D.D.C. 1992).

## III. DISCUSSION

### A. Civil Contempt

Plaintiff has shown by clear and convincing evidence that Defendants should be found in civil contempt.

#### 1. Knowledge of Valid Decree

Defendants had actual and constructive knowledge of the July 14, 2014 Preliminary Injunction Order. Counsel for Defendants admitted that Defendants were aware of the Order during the hearing held on the instant Motion. The Order's terms were clear an unambiguous. It stated, *inter alia*,

> That notwithstanding the foregoing, Defendants may pay certain expenses that arise in the ordinary course of business, including valid, arms-length prior perfected mortgages, real estate taxes, utilities and the like, as well as payroll for existing employees of The Unlimited Group, Inc., and any associated withholding taxes for those employees, provided they are existing employees as of today's date and not family members of the Bergers or insiders of the Defendants.
>
> That in order to preserve the *status quo*, all Defendants are hereby **ENJOINED** from paying out or transferring any funds or property to any person or entity other than as explicitly permitted by this Order.

July 14 Order, ¶¶ 2 - 3.

The order was also clear and unambiguous as to whom it applied, namely, "Stuart D. Berger and Deborah D. Berger, Berger Properties of Ohio, LLC, Berger Properties of Florida,

LLC, Berger Properties of Texas LLC, Berger Properties of Maryland LLC, S & D Unlimited of Texas, LLC, S & D Unlimited LLC, and The Unlimited Group, Inc....." July 14 Order, ¶ 1.

### 2. Decree in Movant's Favor

The decree was in the movant's favor as the Preliminary Injunction Order enjoined Defendants from taking certain actions.

### 3. Violation of the Order

It is undisputed that Defendant has knowingly violated this Court's Order. Defendant Berger testified during the Motion Hearing and admitted that a number of family members and friends remained on company payroll after the Court's July 14 Order. Defendant testified that he did not really understand that certain family members and friends were not permitted to remain on company payroll after the Order; however because Defendant Berger is an attorney licensed to practice law, the Court finds that explanation unavailing. The Court's Order was clear, and many of Defendants' subsequent payments and actions violated the terms of the Order. *See* ECF No. 37 1-10. Both Defendant Berger and his counsel conceded at the hearing that Defendants have violated the terms of the Order.

### 4. Movant Suffered Harm

Plaintiff has established the fourth and final requirement that it has suffered harm as result of Defendant's failure to comply with the order. Defendant's shifting of funds from companies to individuals closely associated with Defendant Berger seriously threatens the *status quo*. Further, the Court is convinced by Plaintiff's argument that continued violation of this Court's Order will result in Plaintiff being harmed irreparably by diminution of the collateral securing its loan guaranteed by Defendants.

Having been satisfied that each of the four civil contempt elements has been met, the Court hereby **FINDS** Defendants in civil contempt.

## B. Appointment of a Receiver

The Court also finds that the appointment of a receiver is necessary to prevent the substantial decline in the value of Plaintiff's collateral. Both in the briefs and at the hearing, the Court has been presented with evidence and allegations that Defendants have failed to pay certain real estate taxes on properties which secure Plaintiff. It also appears that Defendants may have failed to pay certain employment taxes in violation of the Court's Order. These actions combined with the aforementioned shifting of funds have created a situation that demands immediate attention. Defendants have been given more than ample time to comply with the Court's decree, and they have shown an unwillingness or lack of understanding as to how to do so. The Court therefore finds the immediate appointment of a receiver necessary to maintain the *status quo*, prevent irreparable harm, and ensure that the Court's decree is followed.

## IV. CONCLUSION

For the reasons stated in open court and above, the Court **FINDS** Defendants in civil contempt and **ORDERS** Defendants to pay a fine in the amount of **$450 PER DAY** from the date of this Order until all individuals added to Defendants' payrolls after the Court's July 14, 2014 Order, related to Defendant Berger, or who are insiders of Defendants are removed from Defendants' payrolls and all other requirements of the Court's Order are met. The fine shall be payable to the Court. The Plaintiff shall notify the Court when Defendants comply with this Order.

The Court further **ORDERS** the immediate appointment of a receiver to maintain the *status quo* and ensure that the Court's decree is followed.  A receiver will be appointed in a separate Order by the Court.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and parties of record.

**IT IS SO ORDERED.**

Raymond A. Jackson
United States District Judge

Norfolk, Virginia
October 30 , 2014

12